# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CASE NO. 3:CR-07-445 |
| v. | |
| | (JUDGE CAPUTO) |
| LUIS ANTONIO DUTTON-MYRIE, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Defendant Luis Antonio Dutton-Myrie's motion to change venue pursuant to Federal Rule of Criminal Procedure 21(a). (Doc. 30.) I will deny this motion because Defendant has failed to show that there is a pervasive prejudice in this community such that an impartial jury cannot be selected or that the jury pool is not a fair cross section of the community.

## BACKGROUND

On November 7, 2007, Defendant, an illegal alien, was indicted for post-deportation reentry into the United States without the permission of the Secretary of Homeland Security in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2) and 6 U.S.C. §§ 202(3), 202(4), and 557. (Doc. 1.) Defendant filed the present motion to change venue on March 22, 2008. (Doc. 30.) This motion is fully briefed and ripe for disposition.

**DISCUSSION**

**I.      Fair Cross-Section of the Community**

The Sixth Amendment of the Constitution provides criminal defendants with the right to be tried by a jury of their peers taken from a fair cross-section of the community. *See Rodgers v. Klem*, Civ. A. No. 1:05-CV-0206, 2007 WL 200959, at *3 (M.D. Pa. Jan. 23, 2007) (Conner, J.) (quoting *United States v. Weaver*, 267 F.3d 231, 236 (3d Cir. 2001) (citing *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975))).  This does not require that a jury have a specific composition; it requires only that the pool from which a jury is drawn "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id*. (quoting *Weaver*, 267 F.3d at 235 (citing *Taylor*, 419 U.S. at 538)).  In order to succeed on a fair cross section claim, a defendant must show, through statistical evidence, that the proportion of distinctive groups in the jury pool misrepresents the actual proportions of these groups in the community.  *See Id*. at *5 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Defendant mentions a fair cross-section claim in his motion to change venue (Doc. 30.) but fails to present an argument in support of this claim except for a one sentence conclusory allegation in his brief in support of this motion.  (Doc. 38.)  Defendant's motion to change venue (Doc. 30.) states that "Defendant is an illegal alien from Panama and his skin complexion is similar to that of an African-American man.  The jury pool composition does not consist of a cross section of the community." (Mot. to Change Venue, Doc. 30. ¶ 2.)  Defendant claims that "[p]ersons of color makes up less than 5-10% of the population yet the make of the jury pool is even less."  This is a conclusory

statement and is not supported by the required statistical evidence needed to support a fair cross-section argument. Defendant fails to show through statistical evidence that distinctive groups in the community are misrepresented in the jury pool; therefore, I will deny his motion to change venue on this basis.

## II.     Jury Prejudice Due to Media Coverage

The Constitution requires that a criminal defendant be tried by "a panel of impartial, indifferent, jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). A change of venue is warranted, when, in violation of this principle, "there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." *United States v. Sinclair*, 424 F. Supp. 719, 720 (D. Del. 1976); *see also* Fed. R. Crim. P. 21(a). In determining whether to grant a motion for change of venue, due to heightened publicity of a defendant's case, the Court utilizes a two (2) step analysis. *See, e.g., United States v. Jones*, 542 F.2d 186, 193 (4th Cir. 1976.) First, the court must determine whether the publicity "is so inherently prejudicial" that venue must be changed because the trial is "presumed to be tainted." *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). Second, a court must conduct voir dire "to determine if actual prejudice exists." *Id*. (citing *Wansley v. Slayton*, 487 F.2d 90, 92-93 (4th Cir. 1973)). Venue should be changed after the first prong of the analysis only in extreme circumstances; ordinarily, "[o]nly where voir dire reveals that an impartial jury cannot be impannelled would a change of venue be justified." *Id*. (citing *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987)); *see also Sinclair*, 424 F. Supp at

721.

"A preconceived notion as to the guilt or innocence of an accused, without more" is insufficient to receive a change of venue. *Dobbert v. Florida*, 432 U.S. 282, 302 (1977). Additionally, a large volume of publicity alone in a given case does not warrant a change of venue. *See Bakker*, 925 F.2d at 732 (citing *Dobbert*, 432 U.S. at 303). In determining whether to grant a motion for change of venue, courts look to the totality of the circumstances. *Dobbert*, 432 U.S. at 303 (citing *Murphy*, 421 U.S. at 798).

One factor that courts look to is whether the publicity is factual or inflammatory in nature. *See Bakker*, 925 F.2d at 732 (finding that media coverage, which discussed the trials and plea agreements of the defendant's former assistants was unemotional and factual in nature and was thus unlikely to prejudice the jury pool); *see also Murphy*, 421 U.S. at 801. Courts also look to the amount of time that has lapsed between the publicity and the start of the trial. *See Murphy*, 421 U.S. at 802 (noting that a seven (7) month period between the publicity and trial reduces the likelihood that a jury pool would be inherently prejudiced) Furthermore, "[b]efore a court may presume prejudice, it must determine whether a jury substantially less subject to the publicity can be impaneled in another location." *Bakker*, 925 F.2d at 733 (finding that nationwide publicity of the case, which was even greater than the coverage within the given district, weighed "heavily against a change of venue based on a presumption of prejudice") (citing 2. C. Wright, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D, § 342 at 251 (2d ed. 1982)).

In the present case, Defendant has simply not provided enough evidence to demonstrate such an extreme circumstance in which the publicity is so inherently

prejudicial that the jury pool in the Middle District is presumed to be tainted. Defendant argues that anti illegal immigration laws have been passed in the Middle District and that extensive media coverage of this prejudiced the jury pool. (Def.'s Br. in Supp., Doc. 38.) It is difficult for the court to evaluate any of the factors listed above, because Defendant does not specifically detail the publicity which he alleges prejudiced the jury pool. In *Sinclair*, the defendant argued that venue was improper because of "the publicity prior to the trial in October of 1976 which resulted in a conviction during the same month." 424 F. Supp. at 720. The court found that because the defendant did not "offer specific examples of the alleged adverse publicity," it had no evidence upon which to find that a fair trial could not be obtained." *Id*.

    Like in *Sinclair*, Defendant has not presented any specific instances of prejudicial publicity. Defendant simply makes broad, conclusory statements about media coverage of anti-illegal immigration laws in the Middle District. (Def.'s Br. in Supp., Doc. 38.) Defendant has presented no evidence from which I can evaluate the factual or inflammatory nature of the publicity or the period of time which will have elapsed between the publicity and Defendant's trial. Furthermore, Defendant has not demonstrated that the prejudicial publicity is more pronounced in the Middle District of Pennsylvania than in the county as a whole; the current concern over illegal immigration is not confined to the Middle District. This is a national issue that is covered extensively on media outlets across the United States, and so, I cannot conclude that changing venue would have an impact on the potential for prejudice in the jury pool. For these reasons, there is simply not enough evidence to show, at this stage, that there is such an inherent prejudice in this area that prevents an impartial jury from being chosen, and therefore, I will deny

Defendant's motion for change of venue. I will, however, be mindful of this issue at voir dire, and, should the need arise, I will address a renewal motion for a change of venue at that time.

## CONCLUSION

For the reasons stated above, I will deny Defendant's motion to change venue. An appropriate order follows.

July 24, 2008　　　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:CR-07-445 |
| v. | (JUDGE CAPUTO) |
| LUIS ANTONIO DUTTON-MYRIE, | |
| Defendant. | |

## **ORDER**

**NOW**, this \_\_24\_\_ day of July, 2008, **IT IS HEREBY ORDERED** that Defendant's motion to change venue is **DENIED**.

                                          /s/ A. Richard Caputo
                                          A. Richard Caputo
                                          United States District Judge